UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**3286 ARCARA WAY 308 LAKE WORTH
TRUST LLC,** individually and on behalf of
those similarly situated,

                  **Plaintiff,**

vs.

**CARRINGTON MORTGAGE
SERVICES, LLC**,

                  **Defendant.**

_____/

Case No.:

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff 3286 ARCARA WAY 308 LAKE WORTH TRUST LLC ("308 Trust") by and

through its counsel, Scott Hirsch Law Group, PLLC, brings this class action lawsuit for violations

of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA"), Section 559.72(9),

Florida Statutes ("Florida Consumer Collection Practices Act" or "FCCPA"), Florida Deceptive

and Unfair Trade Practices Act, Fla Stat. § 501.201, *et seq*. ("FDUTPA"), and Section 701.04(1)[1],

Florida Statutes.  In support Plaintiff alleges the following:

---

[1] Fla. Stat § 701.04 was amended effective October 1, 2023, and provides in pertinent part as follows:
(1)
(a) Within 10 days after receipt of the written request of a mortgagor, a record title owner of the property, a fiduciary
or trustee lawfully acting on behalf of a record title owner, or any other person lawfully authorized to act on behalf
of a mortgagor or record title owner of the property, the mortgagee or mortgage servicer shall send or cause to be
sent an estoppel letter setting forth the unpaid balance of the loan secured by the mortgage. If the written request is
made by a person other than the mortgagor, the request must include a copy of the instrument showing such person's
title in the property or other lawful authorization, and the mortgagee or mortgage servicer must notify the mortgagor
of the request.
(b) The estoppel letter must at a minimum include:
    **1.** The unpaid balance of the loan secured by the mortgage as of the date specified in the estoppel letter,
    **including an itemization of the principal, interest, and any other charges comprising the unpaid
    balance**; and
    **2.** Interest accruing on a per-day basis for the unpaid balance from and after the date specified in the
    estoppel letter, if applicable.
Fla. Stat. § 701.04 (emphasis added).

## NATURE OF THE ACTION

1.      This is a putative class action brought through Fed. R. Civ. P. 23.  It is brought by a Florida limited liability corporation on its own behalf and on behalf of all others similarly situated, against one of the country's largest loan servicers, CARRINGTON MORTGAGE SERVICES, LLC ("Defendant" or "Carrington").  Carrington is employed by lenders to "service" mortgages on their behalf.

2.      This class action seeks to recover from Carrington improper fees which are excessive in nature and improperly charged by Carrington as being owed by the mortgagor.  These fees are, in many instances, fraudulent in nature and are added onto the fees the owner owes on the distressed property; as a means of providing fees to Carrington and the lenders they service. Plaintiff and the Class Members are Florida homeowners whose homes have been in foreclosure. Carrington is servicer of the mortgage loans which encumber Plaintiff's and Class Members' homes.  As a servicer, Carrington regularly acts as a debt collector.

## PARTIES JURISDICTION AND VENUE

1.      Plaintiff, 308 Trust is a Florida limited liability corporation with its principal place of business located at 3286 ARCARA WAY, APT. 308 LAKE WORTH, FL 33467, within this judicial district. On October 20, 2022, it purchased a condominium located 3286 Arcara Way, Unit #308, Lake Worth, Florida 33467, via a certificate of title issued through a condominium association foreclosure sale.

2.      Defendant, Carrington is a Delaware limited liability corporation with its principal place of business in Anaheim, California.

3.      This Court has general diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between the Plaintiff and Defendant.  This Court also has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d). CAFA's requirements are satisfied in that (1) the members of the Class exceed 100; (2) the citizenship of at least one proposed Class member is different from that of the Defendant; and (3) the matter in controversy, after aggregating the claims of the proposed Class members, exceeds $5,000,000.00, exclusive of interest and costs.

4.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FDCPA, a federal statute.  The Court also has supplemental jurisdiction over the FCCPA, FDUTPA, and Section 701.04(1), Florida Statutes claims under 28 U.S.C. § 1367, because these claims are so related to the federal FDCPA claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue is proper in the United States District Court in and for the Southern District of Florida pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

## APPLICABLE LAW

## FDCPA STAUTORY STRUCTURE

6.      The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . to promote consistent State action to protect consumers against debt collection abuses…" 15 U.S.C. § 1692.

7.      The FDCPA generally prohibits debt collectors, including Carrington, from using "any false, deceptive, or misleading representation or means in connection with the collection of

any debt" [§ 1692e], and the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f, including, but not limited to:

    a.   False representations or misrepresentations of "the character, amount, or legal status of any debt." *Id.* at § 1692e(2)(A);

    b.   False representations or misrepresentations of any "compensation which may be lawfully received by [the] debt collector for the collection of a debt." *Id.* at § 1692e(2)(B);

    c.   "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* at § 1692f (1); and

    d.   "The use of any false representation or deceptive means to collect or attempt to collect" a debt. *Id.* at § 1692e (10).

## FCCPA STATUTORY STRUCTURE

8.    The purpose of the FCCPA is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing § 559.552, Fla. Stat.).

9.    Like the FDCPA, the FCCPA prohibits persons, including Carrington, from engaging in certain abusive practices in the collection of consumer debts. *See generally* § 559.72, Fla. Stat.

10.    Specifically, the FCCPA states that no person, including Carrington, shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."

4

§ 559.72(9), Fla. Stat. The FCCPA defines both "debt" and "consumer debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6). A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." § 559.55(8).

## FDUTPA STATUTORY STRUCTURE

11.     FDUTPA is a Florida State consumer protection statute designed to protect the consuming public from those who engage in unfair methods of competition, unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.  Fla. Stat. §501.202(2).

12.     FDUTPA imposes liability on any person or entity who engages in "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce…"  Fla. Stat. § 501.204(1).

13.     The remedies available under FDUTPA provide for recovery of actual damages. That recovery is "in addition to remedies otherwise available for the same conduct under state or local law."  Fla. Stat. § 501.213; *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 605 (Fla. 2d DCA 1997).

## FACTUAL ALLEGATIONS

14.     On October 20, 2022, Cindi Dixon and Karl Dixon purchased, at a condominium association foreclosure sale, the subject property now owned by Plaintiffs, located at 3286 Arcara Way, Unit #308, Lake Worth, Florida 33467 ("the Property").  The condominium association had foreclosed on the property because the previous owner, who was deceased, failed to pay

condominium association fees.  Florida Statute § 718.116, permits condominium associations to foreclose under those circumstance to enable them to recover their unpaid fees.

15.     The Dixons transferred the property into their entity KC Capital. Thereafter, on August 29, 2023, the Property was transferred by quit claim deed to 308 Trust.  The current manager of 308 Trust acquired it for use as their personal residence.

16.     By purchasing the home at the condominium association's foreclosure action, 308 Trust acquired title to the property subject to the previous owner's mortgage. This mortgage was also the subject of a foreclosure action.  Carrington was the servicer of this first mortgage.

17.     On September 28, 2023, 308 Trust, through its owner, contacted Carrington to determine what amounts were left unpaid on the mortgage so that 308 Trust could satisfy the property outright, with a clear title.

18.     This process – the determination of amounts unpaid on the mortgage so that the property can be satisfied with clear title – is conducted through the transmittal of an "estoppel letter" and is recognized under Fla. Stat. § 701.04.

19.     Pursuant to Fla. Stat. § 701.04(1)(a), it is a violation of the statute, for the lender or its agents to deliberately inflate amounts properly due under or secured by a mortgage. *Laptopplaza, Inc. v. Wells Fargo Bank, NA*, 276 So. 3d 375, 376 (Fla. 3d DCA 2019).

20.     Carrington provided Plaintiff with a statement, identified as a "Payoff Quote" on October 18, 2023.

21.     The "Payoff Quote" and list of fees due sent to Plaintiff pursuant to Fla. Stat. § 701.04, did not contain an accurate payoff balance.  Indeed, there existed fees that were overstated, excessive, unauthorized, and fess that were never incurred.  Specifically, and by way of example, the list of fees contained line item with an amorphous description for "PREVIOUS LENDER

6

OTHER FEES" in the amount of $3,829.57 and $5,000.00.  Both these fees were supposedly

incurred on April 26, 2022.  To confound matters, Plaintiff discovered an affidavit Carrington filed

in the foreclosure matter pending in the Circuit Court of Palm Beach County seeking to foreclose

the mortgage loan at issue.  *See* Case No. 2022-CA-006692.  This affidavit, attested to by

Carrington on August 16, 2023 contained a breakdown of supposed fees owed on the loan

encumbering the Property.  The list contains two charges, allegedly incurred on April 26, 2022 in

the amounts of $3,829.57 and $5,000.00.  However, Carrington labels these charges surreptitiously

as "HOA VIOLATION."   Aside from Plaintiff being unable to decern the nature of these fees,

these fees are completely fraudulent as Plaintiff verified with the homeowners' association that no

such fees were incurred and paid by Carrington or any other servicer of the loan incumbering the

Property.  Moreover, any fees owed to the association were satisfied when the property was

foreclosed by the HOA and the property purchased.  Accordingly, there was no HOA violation

totaling $ 8,829.57 that was paid for by or owed to Carrington. These fees, and others similar, is

nothing more pure profit for Carrington in violation of the FDCPA, FCCPA, Fla. Stat. § 701.04,

and FDUPTA.  A copy of the Payoff Quote and list of fees owed is attached hereto as Exhibit "A."

22.    Additionally, the Payoff Quote contained line items for "PROPERTY

INSPECTION" which totaled $370 in a 12-month period.  Under normal circumstances property

inspections being performed once a month would not be excessive.  However, the costs Carrington

charged for these "inspections" are excessive.  For example, from October 2022 to February 2023,

Carrington charged $20 for each of these monthly "inspections".  Thereafter, Carrington charged

$30 for March and April of 2023, a 50% increase in cost.  Although Carrington did not charge or

perform an inspection in May 2023, Carrington charged $45 for June, July, September, and

October of 2023, another 50% increase, and a 125% increase from the industry standard of $20 for

these inspections.  Strangely, Carrington charged $30 for the August 2023 inspection.  These fees are clearly inflated, overstated, and nothing but profit Carrington is impermissibly charging and retaining.

23.     Finally, the Payoff Quote contains impermissible fees for two instances for which Carrington changed the locks on Plaintiff's home, a home which Carrington knew was not vacant and Carrington knew it was not permitted under the law to exercise this self-help prior to a final order of foreclosure.   Indeed, Carrington, on May 22, 2023 charged $60.00 for illegally changing the locks on Plaintiff's home and entered a separate line item for $7.00 in sales tax.  Thereafter, Carrington on July 18, 2023 again charged $60.00 for illegally changed the locks, but this time charged $4.20 for sales tax.  There is no indication how the sales tax was calculated for these two identical charges, nor is there any indication that sales tax was permitted to be charged or incurred.  These charges are a further example of Carrington's impermissible acts and blatant violations of Federal and Florida State debt collection laws.

24.     Carrington is an entity that at all relevant times was engaged in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C § 1692a(5) and by Fla. Stat. § 559.55(7).

25.     Carrington is a "debt collector" as defined in the FDCPA, § 1692a(6) and Fla Stat. § 559.55(7), in that it acquired the servicing of the loans at issue after default and uses the U.S. Mail in a business for the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due by another.

26.     Carrington is a mortgage loan servicer that regularly services mortgage loans in Florida.

27.     In its role as mortgage loan servicer, Carrington was responsible for preparation of items concerning the Note and Mortgage including, but not limited to, preparing and sending monthly statements, accounting for credit and debits on the Note, calculating, collecting, and disbursing escrow amounts, sending notices, overseeing the judicial foreclosure process including providing information for the same, and calculating payoff figures and transmitting payoff figures.

28.     Additionally, as part of its loan servicing responsibilities, Carrington regularly issues loan payoff statements, collects loan payoff payments, and process the paperwork necessary to release the mortgage lien once payment has been satisfied.

29.     Payoff Statements generated by Carrington are uniform in composition and form.

30.     The uniform payoff statement contains a line item of charges which are completely vague and identified only as "Previous Lender Other Fees."  The composition and the amounts comprising the charges for "Previous Lender Other Fees" is not itemized or disclosed. There is no explanation provided concerning the ambiguously labeled "Previous Lender Other Fees."  Indeed, there is no indication that the amounts of the charges contained within the "Previous Lender Other Fees" are estimates or were actually incurred.

31.     The uniform payoff statement also contains a line item of charges which are completely vague and identified only as "Escrow Shortage" totaling $17,576.77.  The composition and the amounts comprising the charges for "Escrow Shortage" is not itemized or disclosed. There is no explanation provided concerning the ambiguously labeled "Escrow Shortage."  Indeed, there is no indication that the amounts of the charges contained within the "Escrow Shortage." are estimates or were actually incurred.

32.     Carrington knows that demands for payment containing the non-itemized amorphous charges of "Previous Lender Other Fees" and "Escrow Shortage" is misleading as it

does not give consumers, such as Plaintiff and Class Members, the ability to knowledgably assess the validity of the claimed debt.  Moreover, Florida law requires that these statements and charges be itemized for the consumer to understand the charges being levied.

## CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this action individually and on behalf of all individuals similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following "National Class":

All persons in the United States, to whom Carrington mailed a debt collection communication not returned as undeliverable to Carrington, in connection with the collection of a consumer debt, within the applicable statues of limitations, that collected or attempted to collect, using Payoff Quotes or statements that contained (a) overstated fees; or (b) fees that were not allowed under the law or mortgage agreement; (c) or fees that were fraudulent in nature, such as a Previous Lender Other Fees.

34.    In addition to the national class, Plaintiff brings a subclass on behalf of Florida residents pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), the "Florida Class":

All persons in the State of Florida, to whom Carrington mailed a debt collection communication not returned as undeliverable to Carrington, in connection with the collection of a consumer debt, within the applicable statues of limitations, that collected or attempted to collect, using Payoff Quotes or statements that contained (a) overstated fees; or (b) fees that were not allowed under the law or mortgage agreement; (c) or fees that were fraudulent in nature, such as a Previous Lender Other Fees.

35.     Plaintiff reserves the right to modify or amend the proposed class definitions before the Court determines whether certification is appropriate.

36.     Excluded from the Class are persons whose Payoff Quotes according to Carrington records were returned as undeliverable, persons whose mortgages were for commercial purposes, not for personal, family, or household purposes, and Defendant, and any subsidiary or affiliate of Defendant, and the directors, officers and employees of Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

37.     Under Fed. R. Civ. P. 23(a)(1), the proposed class is made up of at least 40 persons, the joinder of whom are impracticable except by means of a class action.  The disposition of the claims in a class action will benefit both the parties and the Court.  The exact number of class members can be determined through discovery and review of Carrington's business records.

38.     The proposed class is ascertainable because it is defined by reference to objective criteria.  In addition, and upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by Carrington.

39.     In conformance with Fed. R. Civ. P. 23(a)(2), all Class Members' claims (including 308 Trust's) are unified in that they arise from the same improper charging and collection practices arising out of materially identical circumstances. 308 Trust's interests are coincident with, and not antagonistic to, those of the other members of the proposed class.

40.     Consistent with Fed. R. Civ. P. 23(a)(3), 308 Trust is a member of the class. Its claims are typical of all other Class Members.  All Class Members' claims are unified, as all were victims of the same collection and charging practices.

11

41.     Consistent with Fed. R. Civ. P. 23(a)(4), 308 Trust will adequately represent the class because it has interests in common with the proposed Class Members and it has retained attorneys who are experienced in class action litigation.

42.     Pursuant to Fed. R. Civ. P. 23(b)(3), there is a well-defined community of interest in the questions of law and fact involving and affecting the class to be represented by 308 Trust. Common questions of law and/or fact predominate over any questions affecting only individual members of the class.  Common questions include, but are not limited to, the following:

    a.   Whether Carrington's impositions of "Previous Lender Other Fees" that are not traceable back to actual allowed services provided violate the FDCPA;

    b.   Whether Carrington's impositions of "Previous Lender Other Fees" that are not traceable back to actual allowed services provided violate the FCCPA;

    c.   Whether Carrington's impositions of "Previous Lender Other Fees" that are not traceable back to actual allowed services provided violate Fla. Stat. § 701.04.

    d.   Whether Carrington's impositions of "Previous Lender Other Fees" that are not traceable back to actual allowed services provided violate the FDUPTA;

    e.   Whether Plaintiff and Class Members are entitled to statutory damages under the FDCPA and the amounts thereof;

    f.   Whether Plaintiff and Class Members are entitled to statutory damages under the FCCPA and the amounts thereof; and

    g.   Whether Plaintiff and Class Members are entitled to actual and statutory damages under Fla. Stat. § 701.04 and the amounts thereof;

    h.   Whether Plaintiff and Class Members are entitled to statutory damages under the FDUPTA and the amounts thereof.

12

43.     Further, the prosecution of separate actions by individual members of the class would create a risk of:

    a.  Inconsistent or varying adjudications concerning individual members of the class that would establish incompatible standards of conduct for the defendant opposing the class; and

    b.  Adjudication with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of other members not parties to such adjudications, and/or substantially impair or impede the ability of other non-party class members to protect such individual interests.

44.     The class action method is appropriate for the fair and efficient prosecution of this action.

45.     Individual litigation of all claims that might be asserted by all class members would produce such a multiplicity of cases that the judicial system, having jurisdiction of the claims, would remain congested for years.  Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of the defendant.

46.     The certification of the class would allow litigation of claims that, in view of the expense of the litigation, may be an insufficient amount to support separate actions.

## COUNT I

### (Fair Debt Collection Practices Act 15 USC §§ 1692e, 1692f)

47.     Plaintiff repeats and realleges paragraphs 1 through 32 as if fully stated herein.

48.     Plaintiff and each Class Member was a "consumer" as defined by 15 U.S.C. § 1692a(3).

49.     The mortgage loans encumbering the property of Plaintiff and Class Members, which Carrington service, are debts under the FDCPA because each is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that is]…primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5)

50.     Carrington is a "debt collector" of those mortgage loans as defined by 15 U.S.C. § 1692a(6) because it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another, including the mortgage debts from Plaintiff and Class Members via Payoff Quotes. The Payoff Quotes and servicing letter described above indeed uniformly confirmed this by identifying Carrington as a debt collector. And Carrington acquired the servicing rights of Plaintiff and each Class Member's mortgage after it was in default.

51.     Carrington engaged in direct "communications" with Plaintiff and Class Members as defined by 15 U.S.C. § 1692a(2) when it sent them or their representatives Payoff Statements, purportedly demanding money due for reinstatement or payoff of their mortgage loans.

52.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

53.     Congress created shared, substantive statutory rights of Plaintiff and the Class Members to be privately enforced and protected under the FDCPA, which Carrington has violated. *See* 15 U.S.C. §§ 1692, 1692e, 1692f.

54.     15 U.S.C. §1692e states, in relevant part,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ……
>
> (2) The false representation of—
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully

14

received by any debt collector for the collection of a debt.
………

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

55.    15 U.S.C. § 1692f states, in relevant part,

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

56.    Based on the foregoing allegations, Carrington used deceptive means of collecting

debts—the "HOA Violation" or "Previous Lender Other Fees", the overstated and inflated charges

for property inspections, and the illegal fees and acts of changing the locks and charging fees and

sales tax, incorporating them—in violation of 15 U.S.C. § 1692e(10), because it represented them

in Payoff Quotes in a confusing, inaccurate manner, or in a manner that would likely mislead a

consumer.

57.    Based on the foregoing allegations, Carrington violated 15 U.S.C. § 1692e(2)(A)

because through its Payoff Quotes imposing "Previous Lender Other Fees", "Escrow Shortage",

the overstated and inflated charges for property inspections, and the illegal fees and acts of

changing the locks and charging fees and sales tax, incorporating them, it falsely or in a misleading

manner stated, or mispresented, the amount, character, or status of the amounts needed to payoff

Plaintiff's and Class Members' mortgage debts.

58.    Based on the foregoing allegations, Carrington violated 15 U.S.C. § 1692e(2)(B)

when through its Payoff Statements imposing ""Previous Lender Other Fees", "Escrow Shortage",

the overstated and inflated charges for property inspections, and the illegal fees and acts of

changing the locks and charging fees and sales tax, it falsely or in a misleading manner stated, or mispresented, the compensation that it might lawfully receive from Plaintiff and Class Members.

59.    Based on the foregoing allegations, Carrington used unfair means of collecting amounts for "Previous Lender Other Fees", "Escrow Shortage",  the overstated and inflated charges for property inspections, and the illegal fees and acts of changing the locks and charging fees and sales tax, incorporating them in violation of 15 U.S.C. § 1692f, because the amounts were not expressly authorized by Plaintiff's and Class Members' mortgage instruments creating their debts as they must be under those instruments, or they were not permitted by law.

60.    These violations of FDCPA caused injury to Plaintiff and Class Members by violating the foregoing substantive FDCPA rights.

61.    As a result of these violations, Plaintiff and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under 15 U.S.C. § 1692(k).

## COUNT II

**(Florida Consumer Collection Practices Act § 559.72(9), Fla. Stat)**

62.    Plaintiff repeats and realleges paragraphs 1 through 32 as if fully stated herein.

63.    Section 559.72, Florida Statutes, of the FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debts.

64.    Carrington is a "person" within the meaning of the FCCPA.

65.    The mortgage loans encumbering the properties of Plaintiff and Class Members, and being serviced by Carrington, are each a "debt" under the FCCPA because each one is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily

for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6), Fla. Stat.

66.     The FCCPA creates a private right of action. See § 559.77, Fla. Stat.

67.     The Florida Legislature created shared, substantive statutory rights of Plaintiff and Class Members to be enforced and protected privately under the FCCPA, which Carrington violated. §§ 559.72, 559.72(9), 559.77, Fla. Stat.

68.     Under Section 559.72, Florida Statutes,

In collecting consumer debts, no person shall:

……

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist.

69.     Based on the foregoing allegations, Carrington violated Section 559.72(9), Florida Statutes, by attempting to collect "Previous Lender Other Fees", "Escrow Shortage",  the overstated and inflated charges for property inspections, and the illegal fees and acts of changing the locks and charging fees and sales tax, incorporating them, when, as stated above, it knew that the fees, and as a corollary, the total amounts incorporating them, were not legitimate debts.

70.     Based on the foregoing allegations, Carrington violated Section 559.72(9), Florida Statutes, by attempting to collect "Previous Lender Other Fees", "Escrow Shortage",  the overstated and inflated charges for property inspections, and the illegal fees and acts of changing the locks and charging fees and sales tax, incorporating them, when, as stated above, it knew it had no legal right to collect the fees, and as a corollary, no legal right to collect the total amounts incorporating them.

71.     These violations of FCCPA caused injury to Plaintiff and Class Members by violating the foregoing substantive FCCPA rights.

72.     As a result of these violations, Plaintiff and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under Section 559.77, Florida Statutes.

## COUNT III

### (Violation Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et seq)

73.     Plaintiff repeats and realleges paragraphs 1 through 32 as if fully stated herein.

74.     Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201, *et seq.*) prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.202(2).

75.     A practice is "deceptive" within the meaning of Florida's Deceptive and Unfair Trade Practices Act if it is likely to mislead consumers.

76.     Plaintiff and Class Members are consumers as defined by section 501.203, Fla. Stat. Carrington is engaged in trade or commerce within the meaning of the FDUTPA.

77.     Carrington violated the FDUTPA by engaging in the unfair and deceptive practices as described herein, which offend public policies and are immoral, unethical, unscrupulous and injurious to consumers.

78.     Plaintiff and Class Members are consumers who have been aggrieved Carrington's unfair and deceptive practices by paying excessive and overstated fees to pay off the mortgages encumbering their homes such as charges for "Previous Lender Other Fees", and unsubstantiated fees for "Escrow Shortage", as well as overcharged "Property Inspections."  Upon information and belief, these fees are overstated, and Carrington retains the excess for itself as profit.

79.     The harm suffered by Plaintiff and the Class Members was directly and proximately caused by the deceptive and unfair practices of Carrington, as more fully described herein.

80.     Pursuant to sections 501.211(2) and 501.2105, Fla. Stat., Plaintiff and the Class Members make claims for actual damages, attorneys' fees and costs.

<u>COUNT IV</u>

**(Violation Florida Statute § 701.04)**

81.     Plaintiff repeats and realleges paragraphs 1 through 32 as if fully stated herein.

82.     Section 701.04, Florida Statutes, provides for a statutory cause of action for the deliberate inflation of amounts properly due and secured by a mortgage.

83.     Based on the foregoing allegations, Carrington violated Section 701.04, Florida Statutes, by attempting to collect "Previous Lender Other Fees", "Escrow Shortage",   the overstated and inflated charges for property inspections, and the illegal fees and acts of changing the locks and charging fees and sales tax, incorporating them, when, as stated above, it knew that the fees, and as a corollary, the total amounts incorporating them, were not legitimate debts and in fact deliberately inflated.

84.     These violations of Section 701.04 caused injury to Plaintiff and Class Members by violating the foregoing statutory rights.

85.     As a result of these violations, Plaintiff and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under Section 701.04, Florida Statutes.

<u>**JURY DEMAND**</u>

86.     Plaintiff respectfully requests a trial by jury on all issues so triable.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE Plaintiff, on behalf of itself and the Class, respectfully requests this Court to award against Carrington in favor of Plaintiff and the Class all of the following:

      a.  Certifying Plaintiff's claims for class treatment under Federal Rules of Civil Procedure 23(a) and (b)(3), appointing Plaintiff as Class Representative, and appointing Plaintiff's attorneys as counsel for the Class;

      b.  A judgment for statutory damages under the FDCPA, and/or FDUTPA, and/or the FCCPA, and/or Fla. Stat. § 701.04;

      c.  A judgment for costs and reasonable attorney's fees under the FDCPA, and/or FDUTPA, and/or the FCCPA, and/or Fla. Stat. § 701.04; and,

      d.  Any other relief for Plaintiff and the Class the Court deems just and proper.

Dated: October 23, 2023.

By: *Scott D. Hirsch*
Scott David Hirsch
**SCOTT HIRSCH LAW GROUP**
Fla. Bar No. 50833
6810 N. State Road 7
Coconut Creek, FL 33073
Tel: (561) 569-7062
Email: scott@scotthirschlawgroup.com

*Attorneys for Plaintiff*